UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DEBRA POTTS, KIMBERLY HUNT, and MERRITT CHAPLIN, <br><br> Plaintiffs, <br><br> v. <br><br> NASHVILLE LIMO & TRANSPORT, LLC, JOSHUA LEMAY, and TRACY MCMURTRY, <br><br> Defendants. | Case No. 3:14-cv-1412 <br> Judge Aleta A. Trauger |

## MEMORANDUM

The plaintiffs have a filed a Motion for Conditional Class Certification and Court-Authorized Notice (Docket No. 45), to which defendants Nashville Limo & Transport, LLC and Joshua Lemay filed a Response in partial opposition (Docket No. 47), and defendant Tracy McMurtry filed a Response in opposition (Docket No. 49). For the reasons stated herein, subject to certain adjustments to the form of the notice and the manner of its publication, the motion will be granted.

## BACKGROUND

Until March 1, 2013, Tracy McMurtry owned Nashville Limo Bus, LLC ("NLB"). On March 1, 2013, defendant Nashville Limo & Transport, LLC ("NL&T") – a Tennessee limited liability company formed by Lemay – purchased the assets of NLB. It appears from the record that the business may have operated as "Nashville Limo & Transport" both before and after the

1

sale.[1] Nevertheless, to keep the record clear, the court will refer to the business as "NLB" for the time period prior to March 1, 2013, and as "NL&T" for time period thereafter.

## I. The Initial Complaint

The plaintiffs in this case worked for NLB or NL&T (or both) as "drivers" or "transporters."[2] On July 1, 2014, the plaintiffs filed a Complaint against NL&T and Lemay only (Docket No. 1), asserting that, between July 1, 2011 and July 4, 2014, NL&T and Lemay failed to pay them a minimum wage, failed to pay them required overtime, and failed to keep records of compensable work time in violation of the Fair Labor Standards Act ("FLSA").

In response to the Complaint, NL&T and Lemay filed a Motion to Dismiss or Require Joinder of Party and a More Definite Statement (Docket No. 10), in support of which it filed the Declaration of Joshua M. Lemay. In substance, NL&T and Lemay represented that (1) at least some plaintiffs and putative class members had worked for NLB during the relevant time frame, thereby making McMurtry an indispensable party, and (2) McMurtry had furnished to Lemay a copy of a confidential release signed by Debra Potts that purported to release NLB and McMurtry from any FLSA claims to that point. In response, the plaintiffs filed an Amended Collective Action Complaint as a matter of right (Docket No. 22), thereby mooting the Rule 12 motion.

---

[1] The parties have not explained precisely the nature of the business at issue, although they agree that it involves employees or independent contractors who drive vehicles for other entities. As set forth in a previous complaint against NLB and McMurtry in another case, the business allegedly "engages in the business of transporting automobiles for car dealerships and automobile wholesalers." *Coats et al. v. Nashville Limo Bus, LLC, et al.*, No. 10-0759 (M.D. Tenn.) (Docket No. 1 in that case, at p. 2).

[2] There appears to have been continuity of the business, notwithstanding the change in ownership of the business assets.

2

## II. The Amended Complaint and the Previous Case Against NLB and McMurtry

In the Amended Complaint, the plaintiffs added McMurtry as a party and alleged FLSA claims against him (in addition to those asserted against NL&T and Lemay).

The Amended Complaint actually reflected the second time that McMurtry was sued in this court for FLSA violations by employees or former employees of NLB. On August 12, 2010, Plaintiffs David Coats and Tammy Coats filed a collective action lawsuit against McMurtry,[3] alleging that NLB had misclassified its drivers as independent contractors rather than employees and that the defendants had retaliated against the plaintiffs for raising the issue (in violation of the FLSA and Tennessee law). The case initially proceeded before Judge Campbell, who granted the plaintiffs' motion to certify a collective action (*Coats* Docket No. 53), and 44 additional plaintiffs joined the lawsuit (*Coats* Docket Nos. 69-72, 74, 76-85). Potts and Hunt, who are two of three named plaintiffs in this case, were not among them. After the case was reassigned to Judge Sharp, the parties settled the case. As reflected in the parties' request for judicial approval of a settlement concerning the opt-in plaintiffs, which the court ultimately granted, the parties settled their claims for the time period from January 2008 to January 2011.[4]

Here, in response to the Amended Complaint, the defendants took differing approaches. NL&T and Lemay did not challenge the sufficiency of the complaint allegations; instead, they

---

[3] The plaintiffs also sued two other individuals whom they alleged were co-owners of NLB. Those individuals denied that they were, in fact, co-owners of the business, and the parties later stipulated to their dismissal. (*See Coats* Docket Nos. 63 and 64.)

[4] After the parties filed their proposed settlement, they engaged in a remarkably contentious dispute concerning whether plaintiffs' counsel was entitled to additional fees beyond those stated in the settlement agreement, leading to cross-motions for sanctions and attorney's fees. Judge Sharp ultimately denied the cross-motions and dismissed the case with prejudice.

3

filed an Answer and an associated Cross-Claim against McMurtry, contending that McMurtry had indemnified them against any pre-asset sale "labor and employment issues." By contrast, McMurtry filed a Motion to Dismiss under Rule 12(b)(6) for failure to state a claim (Docket No. 31), asserting that (1) the plaintiffs had affirmatively pleaded that McMurtry was not liable, and (2) the allegations failed to state a FLSA claim under the *Twombly*/*Iqbal* standard. McMurtry's motion did not raise the issue of pre-sale releases of any named plaintiff or putative plaintiff.

In a December 16, 2014 Memorandum and Order, the court rejected both of McMurtry's arguments and denied his Motion to Dismiss. (Docket No. 36.) The court set an initial case management conference for January 5, 2015.

### III. The CMO

On December 31, 2014, in advance of the case management conference, the parties filed an agreed proposed case management order. (Docket No. 38.) In the section related to McMurtry's theory of the case (a section typically drafted by that particular party), McMurtry denied that NLB had violated the FLSA under his watch, and he asserted that, "[t]o the extent that there are or were such violations, however, Mr. McMurtry is not legally liable for them." As to the named plaintiffs, McMurtry stated that Potts' January 2013 release barred her claims, that plaintiff Merritt Chaplin never worked for NLB, and that "business records conclusively prove that Plaintiff Kimberly Hunt was at all times properly characterized and paid under state and federal law, including the FLSA." McMurtry's theory of the case did not reference a release relative to Hunt or to any putative class plaintiff.

In the section entitled "Conditional Certification," the proposed order also reflected that the parties agreed that the issue of whether to conditionally certify the case "should be resolved early, and until the Court has had an opportunity to rule on whether to conditionally certify this

4

case and permit others to opt-in pursuant to 29 U.S.C. § 216(b), it will be difficult to determine suitable deadlines to govern the progression and disposition of this case." The parties agreed that, "[i]f Plaintiff's conditional certification motion is granted, an uncertain number of plaintiffs may join the case, which would likely require additional time for discovery and, absent decertification and/or dismissal of the case, additional time for trial preparation." The parties proposed a schedule for discovery concerning conditional certification and a briefing schedule for the forthcoming motion. Aside from the specific reference to Potts' January 2013 release, the proposed order did not reference pre-sale releases with respect to the other named plaintiffs or putative class members.

By clerical error, the proposed order was not entered following the case management conference. On March 6, 2015, the parties filed a joint motion to enter a revised case management order that extended all of the underlying deadlines by 45-60 days. (Docket No. 41, Ex. A.) The proposed order did not otherwise change the language set forth in the December 31, 2014 proposed order. On March 9, 2015, the court entered the parties' proposed order as a Revised Case Management Order. (Docket No. 43.)

**IV. <u>Motion for Conditional Certification</u>**

On June 5, 2015, the plaintiffs filed the instant Motion for Conditional Certification (Docket No. 45), in support of which they have filed a Memorandum of Law (Docket No. 46) with supporting exhibits, including declarations from plaintiffs Potts, Hunt, and Chaplin, a copy of an employee handbook and signed "Driver Agreement," and a proposed opt-in notice. In the motion, the plaintiffs seek to provide notice to all current and former "workers who worked for Defendants delivering vehicles" within the past three years. The plaintiffs request that the defendants provide them a "computer readable data file" that lists each putative class member

5

and provides his or her name, last known address, telephone number, dates of employment, location of employment, employee number, and the last four digits of his or her social security number. The plaintiffs also request that notice should issue by (1) first class mail, (2) email, and (3) posting a notice "in a conspicuous area" at each of the defendants' offices.

NL&T and Lemay do not oppose conditional certification. However, they contend that (1) they should be required to produce a list only from March 1, 2013 forward, when NL&T began operations, (2) they should not be required to produce a "computer readable data file" that includes information beyond names and last known addresses, (3) the notice should have a 45-day cutoff period, and (4) notice should be provided only via first-class mail.

McMurtry opposes conditional certification and challenges both the notice and the suggested manner of publication. First, in an affidavit, he avers that, "to the best of my knowledge, all active [NLB] employees signed a waiver and statement regarding lawful payment in the same or substantially the same form as the one signed by Plaintiff Debra Potts." His affidavit attaches only the Potts release. Also, curiously, in another section of his brief, he asserts that he has "iron-clad defenses" against claims by Potts and Chaplin, but he simply "denies any wrong-doing" relative to Hunt.

Second, McMurtry argues that the plaintiffs are required to (but cannot) meet a heightened standard of proof that applies because they obtained some pre-certification discovery. In support of this argument, he contends that only admissible evidence may be considered at the certification stage and that the affidavits contain inadmissible hearsay or conclusory statements that fail to identify similarly situated putative plaintiffs. McMurtry argues that, based on his recollection of the releases, he has a "good faith reason to believe that no such potential plaintiffs exist."

6

Third, he contends that the plaintiffs did not provide evidence of a "widespread discriminatory" plan and that, regardless, the proposed class is unmanageable because resolution of each's plaintiff's claim will require an individualized inquiry into each plaintiff's work schedule and history.

Fourth, he asserts challenges to the proposed notice and its publication, arguing that (1) the notice look-back period should be only two years, (2) notice should be made only by first-class mail, (3) the class definition should be "more clearly narrowed and defined"[5]; (4) the plaintiffs should be made aware that they may be required to participate in discovery and that they could be held liable for their share of taxable defense costs if the defendants are the prevailing parties; (5) the contact information for defense counsel should be included in the notice; and (6) the notice should include a statement of the defendants' position, including specific reference to the waivers signed by NLB employees.

## STANDARD FOR CONDITIONAL CERTIFICATION

The FLSA provides that a collective action "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Because the statute only requires that employees be "similarly situated," plaintiffs seeking to certify a collective action under the FLSA face a lower burden than those seeking to certify a class action under Federal Rule of Civil Procedure 23. *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 584 (6th Cir. 2009). Once a collective action is certified, however, employees seeking to join the class must opt into the litigation by filing a written consent with the court. 29 U.S.C. § 216(b).

---

[5] McMurtry does not explain what he means by this.

7

The FLSA does not define the term "similarly situated." However, the Sixth Circuit has held that "plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien*, 575 F.3d at 585. Employees may also be similarly situated if their claims are merely "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* Indeed, "[s]howing a 'unified policy' of violations is not required [for certification]." *Id.* at 584.

Typically, courts employ a two-phase inquiry to address whether the named plaintiffs are similarly situated to the proposed opt-in plaintiffs. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006); *O'Brien*, 575 F.3d at 583. "The first [phase] takes place at the beginning of discovery. The second occurs after all of the opt-in forms have been received and discovery has concluded." *Comer*, 454 F.3d at 546.

At the first stage, the plaintiff bears the burden of showing that the employees in the class are similarly situated. *Shabazz v. Asurion Ins. Serv.*, 2008 WL 1730318, at *3 (M.D. Tenn. April 10, 2008). At that point, "'the certification is conditional and by no means final.' The plaintiff must show that 'his position is similar, not identical, to the positions held by the putative class members.'" *Comer*, 454 F.3d at 546-47 (quoting *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)). In *Comer*, the Sixth Circuit approvingly quoted the lower court's decision, which stated that conditional certification "'need only be based on a modest factual showing,'" *Comer*, 454 F.3d at 547 (quoting *Pritchard*, 210 F.R.D. at 596), and that the court should use "'a fairly lenient standard [that] typically results in . . . certification.'" *Comer*, 454 F.3d at 547 (quoting *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000)); *see also Shabazz*, 2008 WL 1730318, at *3 (stating that plaintiffs "must simply

8

submit evidence establishing at least a colorable basis for their claim that a class of similarly situated plaintiffs exist[s]") (quotation marks omitted).  If the named plaintiffs show that employees in the proposed class are similarly situated, "[t]he district court may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit." *Comer*, 454 F.3d at 546.

## ANALYSIS

### I. Heightened Standard

As McMurtry points out, if a plaintiff has had the opportunity to conduct some discovery, certain district courts within the Sixth Circuit have adopted a "modest plus" or "intermediate level" of review at the certification stage, an approach that purports to be more scrutinizing than the typical "modest factual showing" standard.[6]  In these and others cases, district courts have tied themselves in knots as to whether an intermediate standard is appropriate and, if so, what that standard might be.  At most, these cases suggest that, following limited discovery, some courts have weighed the sufficiency of affidavits against any competing evidence produced in the targeted discovery period.  It seems sensible for a court at least to consider additional information following limited discovery, and courts can evaluate the weight to assign to that information on a case-by-case basis.

Here, the only evidence presented by McMurtry is his affidavit and a January 2013 release signed by Potts.  He contends that these documents collectively establish that there are no

---

[6] *See, e.g., Pacheco v. Boar's Head Provisions Co.*, 671 F. Supp. 2d 957, 960 (W.D. Mich. 2009); *Bacon v. Eaton Aeroquip, LLC*, 2012 WL 6567603, at *3 (E.D. Mich. Dec. 17, 2012); *Jiminez v. Lakeside Pic-N-Pac, LLC*, 2007 WL 4454295, at *2 (W.D. Mich. Dec. 14, 2007).

9

putative plaintiffs with a potentially viable claim against him.  There are two problems with his argument.

First, despite multiple opportunities to do so (in his Rule 12 motion and in either iteration of the agreed proposed case management order), McMurtry did not raise the issue of the releases relative to putative class plaintiffs until his Response to the Motion for Conditional Certification. In fact, at the initial case management conference, he agreed that the court should first resolve the issue of certification before proceeding to plaintiff-specific issues.  Assuming *arguendo* that McMurtry could have preserved this argument in connection with his opposition to the certification motion, he did not do so.  His argument can be rejected on that basis alone.

Second, even taking the evidence introduced by McMurtry into account, it does not establish that all former NLB drivers (*i.e.*, putative plaintiffs) cannot recover because they released McMurtry from potential liability.  His affidavit contains some provocative qualifiers, stating that, "to the best of my knowledge" all "active" NLB employees signed a release of their potential FLSA claims against him.  His affidavit therefore leaves open the possibility that some of NLB's former employees (either active or inactive at the time) in fact did *not* sign a release. Indeed, curiously, McMurtry has taken the position that his records show that Hunt's rights were not actually violated, without specifically contending that she released her claims (in contrast to his "iron-clad" defense against Potts) and without filing a release signed by her.  Moreover, if McMurtry in fact obtained multiple releases, the court would expect him to have produced more than just the Potts release.

Thus, even considering the evidence presented by McMurtry, he has not shown that the alleged releases provide a basis to deny conditional certification.  Certainly, it would be a legitimate issue if all of the putative plaintiffs who worked for NLB had already released

10

McMurtry from any potential liability, but he neither preserved that argument (relative to the conditional certification motion), nor has he substantiated it.

## II. Introduction of Hearsay

McMurtry argues that the plaintiffs cannot rely on hearsay to support their motion. Some districts have considered hearsay at this stage, whereas others have not. *See Watson v. Adv. Dist. Servs., LLC*, 298 F.R.D. 558, 563 n.5 (M.D. Tenn. 2014) (collecting cases). As this court previously held in *Watson* and in *Rogers v. HCA Health Servs. of Tenn., Inc.*, 2013 WL 3224026, at *2 (M.D. Tenn. June 25, 2013), the court need not limit its consideration of the "modest factual showing" to admissible evidence only, provided that the affidavits are otherwise based on personal knowledge and seem reasonably likely to reflect information that the employee would have learned in the course of his or her employment. *See White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 369 (E.D. Tenn. 2006). Generally, the courts holding otherwise have not explained *why* they excluded inadmissible testimony at this stage. Motions for conditional certification are generally based on a limited factual record, at best, and are not dispositive of the claims at issue, making it unclear to this court why the Rule 56 standard should apply. McMurtry has not persuaded the court to depart from its previous practice.

Of course, in assessing the reliability of information provided by an affiant, the court may take into the account the reasons why the information would be inadmissible.[7]

---

[7] For example, if an affiant avers that Jane Doe had told her (the affiant) that John Doe worked for NL&T and was not paid minimum wage, the court would likely give the statement little to no weight because it is double hearsay and is not based on the affiant's own workplace-related observations. Similarly, if an affiant makes an assertion that lacks plausibility without supporting facts, such as the bare assertion that she has "personal knowledge" concerning employees at facilities in other cities (as opposed to employees at her own facility), the court likely would not rely on that statement.

11

### III. <u>Modest Factual Showing</u>

As NL&T and Lemay concede, the plaintiffs have made a modest factual showing that unnamed transporters for NLB and NL&T are similarly situated.

The three named plaintiffs aver substantially the same facts: they arrived at the office each weekday at about 8:30 a.m. (with no defined end time) to be "transported by van to a vehicle to be delivered," they remained in the office when they were not delivering vehicles or in transit to do so, and they were only compensated for the time spent transporting each vehicle (but not for time at the office or in transit to a vehicle). The plaintiffs aver that they received a flat fee per vehicle that, when averaged out based on hours worked, often amounted to less than the federal minimum wage. They also allege that they routinely worked about 60-65 hours per week but that they did not receive overtime pay for work in excess of 40 hours. Each plaintiff also avers that: (1) "[b]ased on conversations with and personal observations of other employees who transported vehicles[,] I have personal knowledge [that] their job duties were substantially similar to mine;" (2) "[b]ased on conversations with and personal observations of other employees who transported vehicles[,] I have personal knowledge [that] they were not compensated for time spent working for Defendants while not transporting vehicles;" and (3) "based on conversations with other employees who transported vehicles for Defendants[,] I have personal knowledge [that] they also failed to receive proper overtime compensation for hours worked in excess of forty (40) hours." The plaintiffs have also introduced a form Driver Agreement (signed by Potts on April 12, 2010) that purports to characterize NL&T workers as "non-exempt." The plaintiffs have also introduced a NL&T employee handbook that has a blank in the section concerning "Recording Hours Worked" and that does not explain that non-exempt employees may be entitled to overtime.

12

The evidence presented by the plaintiffs sufficiently establishes that, both before and after the sale, the business did not pay wages for time spent at the office or in transit to a vehicle to be driven. Given the simple nature of the work, it is not a leap to credit the plaintiffs' testimony that the other drivers that they observed and spoke with were treated in the same fashion. As to McMurtry's argument that individual issues will predominate with respect to hours worked by each employee, that is an issue for another day and the proper subject of a motion for decertification. It also is an unconvincing argument in the abstract, because most FLSA collective actions require plaintiff-by-plaintiff damages calculations.[8]

In sum, the plaintiffs have made a sufficient showing to justify conditional certification.

### IV. Challenges to the Notice and the Manner of Its Publication

The court agrees with the defendants that the proposed notice requires some adjustments. The notice should at least (1) include the names of the defendants in the description of the lawsuit, not just in the case caption, (2) contain a brief statement of the defendants' respective positions concerning the lawsuit (perhaps including some reference to the releases), (3) indicate that the plaintiffs may be required to participate in discovery; and (4) identify and provided contact information for each defendant counsel. The Notice should also specify a return date. Given the potentially transient nature of the workers at issue, the court will permit putative opt-in plaintiffs 60 days to sign and return the consent form. The court will permit the plaintiffs to look back three years, as they have presented some evidence that NLB may have misclassified workers in the past to avoid paying wages and overtime and that the violations alleged here may

---

[8] Of course, if an employer should have, but did not, maintain adequate records of employee work hours, it would be perverse to permit the employer to defeat conditional certification on the basis that it would be too difficult to reconstruct the past.

13

be part of the same desire to avoid FLSA obligations.  As to whether the notice should include additional information or clarifications (such as a more detailed description of the putative class members), the court will let the parties work that out.  In general, the parties may look to the notice utilized in *Watson* or the notice in *Coats* for guidance as to language previously approved by this court in recent cases.  (*See Watson* Docket No. 75, Ex. E; *Coats* Docket No. 65, Ex. 1.)

The court will not order the defendants to create a "computer-searchable file" containing contact information for members, although the defendants may produce files in that format if that is how they maintained (or maintain) the information in the ordinary course of business.  The defendants shall produce to the plaintiffs only last known names and addresses for members of the putative class.  At this time, in the interest of privacy, the court will not require the defendants to disclose additional identifying information for the putative class members.  NL&T and Lemay shall produce a list of all current and former putative class members who worked for the company from March 1, 2013 forward.  McMurtry shall produce a list of all current and former putative class members who worked for the company prior to March 1, 2013.[9]

As for the manner of publication, the notice may be sent by mail to the putative class members, and it should be posted at a conspicuous place in the business's office.  Although the court has denied requests to post the notice in the workplace in other cases, the court finds that posting the notice is warranted here, given the potentially transient nature of the workers at issue.

## CONCLUSION

For the reasons stated herein, the Motion for Conditional Certification will be granted, subject to certain modifications concerning the content of the notice and the manner of its

---

[9] The parties have not specified the time frame applicable to McMurtry, although it may be July 1, 2014 forward.

14

publication. The court will order the defendants to provide lists with contact information for putative class members within 20 days. The court will also order the parties to confer and to file agreed-upon notice and consent forms within 20 days.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge